FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 13, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SCOTT S.,[1]

                    Plaintiff,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:21-cv-5114-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Scott S. appeals the denial of benefits by the administrative law judge (ALJ). Because the ALJ erred when analyzing Listing 1.04A and when considering the medical opinions, summary judgment is entered in Plaintiff's favor and this matter is remanded for further proceedings.

//

/

---

[1] To protect the privacy of the each social-security plaintiff, the Court refers to them by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. § 416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.*

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* §416.920(c).

[8] *Id.*

[9] *Id.* § 416.920(a)(4)(iii).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] *Id.* § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

Plaintiff filed a Title 16 application seeking disability benefits.[17] His claim was denied initially and on reconsideration.[18] On request, an administrative hearing was held by video before ALJ Stewart Stallings, who took testimony from Plaintiff about his conditions and symptoms.[19] After the hearing, the ALJ issued a decision denying Plaintiff's disability application for the following reasons:

- Step one: Plaintiff had not engaged in substantial gainful activity since December 19, 2018, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease—lumbar spine, morbid obesity, diabetes mellitus with neuropathy, history of right ankle fracture (status post open reduction internal fixation), episodic venous stasis dermatitis, and history of bilateral carpal tunnel syndrome (status post right wrist release surgery).

---

[17] AR 254–68. Plaintiff also filed a Title 2 claim, but at the hearing, Plaintiff's counsel advised that Plaintiff is only pursuing his Title 16 claim. AR 15, 61. In addition, Plaintiff's 2014 disability application was previously denied. AR 96–120.

[18] AR 167–82, 185–98.

[19] AR 56–92.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except he could:

  > lift up to 20 pounds occasionally and 10 pounds frequently; stand or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday with normal breaks. [He] would need a sit/stand option, defined as changing from a standing position to sitting position or vice versa approximately every 30 minutes for about 5 minutes while remaining at the workstation, a stand at will situation would be acceptable as well. No foot control operations; no ladders, ropes, and scaffolds; occasional ramps and stairs; occasional stoop; rare (15% of time) crouch, kneel, or crawl. [He] should avoid exposure to airborne irritants (e.g. fumes odors, dusts, gases); no moving machinery or unprotected heights; no excessive industrial vibration. [He] can frequently handle with dominant right upper extremity.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office helper, mail clerk, or storage facility rental clerk.[20]

When assessing the medical-opinion evidence, the ALJ found:

- the examining opinion of William Drenguis, M.D., and the reviewing opinion of Greg Saue, M.D. persuasive.

---

[20] AR 12–37.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- the reviewing testimony of Howard Platter, M.D., and the treating opinions of Robert Elders, D.O., and Clara Normanyo, M.D. unpersuasive.[21]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence.[22] Likewise, the ALJ found the statements from Plaintiff's mom and sister about Plaintiff's symptoms unpersuasive.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere

---

[21] AR 26–28.

[22] AR 22–29.

[23] AR 28–29.

[24] AR 1–6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[31]

---

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (cleaned up).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

# IV.    Analysis

## A.    Step Three (Listings): Plaintiff establishes consequential error.

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not meet Listing 1.04A. The Court agrees.

Listing 1.04A applies to disorders of the spine, including degenerative disc disease, resulting in compromise of a nerve root or the spinal cord, along with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[32]

If a claimant meets all of the listing criteria or if his impairments medically equal a listed impairment, he is considered disabled.[33] Medical equivalence will be found if the medical findings are at least of equal medical significance to the required criteria.[34] "[I]n determining whether a claimant equals a listing under

---

[32] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

[33] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

[34] 20 C.F.R. § 404.1526(d)(3); *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990).

step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."[35]

Here, the ALJ explained his finding that Plaintiff did not meet or equal Listing 1.04A with this single sentence, "In this case, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under the listing."[36] The Commissioner argues the ALJ's finding is supported by substantial evidence, as the 2017 MRI of the lumbar stated there was "[n]o impingement of the exiting nerve root."[37]

The Commissioner's argument, however, fails to fully appreciate the 2017 MRI findings, which differentiate between the exiting nerve root and the traversing nerve root:

> L4-L5: Left paracentral disc protrusion seen with *displacement of the left traversing L5 nerve root* in the lateral recesses. The protrusion appears to be new since the previous examination. It measures approximately 14 mm in transverse dimension, 7 mm in AP dimension and 9 mm in craniocaudal dimension. *No impingement of the exiting nerve root seen.* Overall, there appears to be mild spinal canal narrowing and mild bilateral neural foraminal narrowing.[38]

---

[35] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (The ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

[36] AR 19.

[37] ECF No. 12 at 10 (citing AR 631).

[38] AR 630–32 (emphasis added).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

The ALJ failed to explain why displacement of the traversing L5 nerve root was not equal to, or the medical equivalence of, nerve root compression.[39] The ALJ also failed to meaningfully discuss the imaging as it pertains to the L5-S1, for which the 2017 MRI revealed moderate to severe disc degenerative changes with severe facet arthropathy and then imaging in 2019 revealed anterior subluxation of the L5 over the S1 measuring about 1 cm, with advanced degenerative change of the L5-S1 disc, including a vacuum disc.[40]

In addition to these imaging results, the objective examinations consistently revealed tenderness in the lumbar region and occasionally an antalgic gait and positive straight leg raise tests.[41] Moreover, later in the ALJ's opinion, when

---

[39] *See Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[40] AR 670.

[41] AR 539–42 (Feb. 2018: antalgic gait and tender lumbar); AR 522–25 (Sept. 2018: same); AR 507–09 (Dec. 2018: decreased range of lumbar motion); AR 672–77 (April 2019: shifting from side to side while seated and standing once to stretch,

discussing why he did not find Dr. Normanyo's sedentary-work opinion persuasive, the ALJ stated there were "physical examinations that documented decreased range of motion, substantial paraspinal hypertonicity in the thoracic-lumbar region, *lumbosacral and sacroiliac joint compression*, [and] piriformis spasm bilaterally."[42] This reference to joint compression is inconsistent with the ALJ's Listing 1.04A finding. And while Plaintiff consistently had full lower extremity muscle strength, Dr. Drenguis recommended that Plaintiff's lifting abilities were limited due to his degenerative changes in his lumbar spine—lifting limitations which were consistent with those suggested by Dr. Normanyo, Dr. Platter, and Dr. Saue.[43] In addition, an orthopedic treatment note in October 2020 assessed

———————————————

rocking back and forth and appearing uncomfortable when rising from chair, normal gait, unable to do full squat due to lumbar discomfort, left side straight leg raise produced low back pain at 60 degrees both seated and supine, full lower extremity muscle strength, and reduced range of motion for lateral bending, extension, and flexion); AR 722–24 (July 2019: substantial paraspinal hypertonicity in thoracic-lumbar region, lumbosacral and sacroiliac compression, piriformis spasm bilateral, with left greater than right; gait appropriate, straight leg test positive on right in lumbar spine, and intact muscle strength in bilateral lower extremities); AR 38–40 (Oct. 2020: lumbar tenderness and antalgic gait).

[42] AR 28 (emphasis added).

[43] AR 126–28, 130–39, 141–49, 152–63, 497–99.

Plaintiff with "recurrence of his lower back pain with radicular symptoms following the S1 nerve root bilaterally, worse on the left than on the right."[44]

Based on this record pertaining to Plaintiff's lumbar conditions, combined with his obesity, diabetes mellitus with neuropathy, and right-ankle injury, the ALJ's conclusory Listing 1.04A denial is not supported by substantial evidence.[45]

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when considering Dr. Normanyo's and Dr. Elder's opinions. The Court agrees. The ALJ's consideration of Dr. Normanyo's opinion is not supported by substantial evidence, and the ALJ erred by not considering Dr. Elder's opined limitations.

1.    <u>Standard</u>[46]

An ALJ must consider and evaluate the persuasiveness of all medical opinions.[47] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[48] Supportability and consistency are the most

---

[44] AR 43 (cleaned up).

[45] *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

[46] Plaintiff's claim is governed by the new medical-opinion-evidence regulations. 20 C.F.R. § 416.920c.

[47] 20 C.F.R. § 416.920c(a), (b).

[48] *Id.* § 416.920c(c)(1)–(5).

important factors, and the ALJ is required to explain how both of these factors were considered.[49]

    2.  Dr. Normanyo

Dr. Normanyo met with Plaintiff in September 2018 and issued a physical functional evaluation based on her evaluation.[50] Dr. Normanyo diagnosed Plaintiff with back pain with sciatica, shoulder pain, peripheral neuropathy, and ankle pain due to his history of fracture, and she opined that Plaintiff was:

- limited to sedentary work, which was defined as lifting 10 pounds maximum and frequently lifting or carrying lightweight articles and walking or standing for only brief periods.

- moderately limited with sitting, standing, walking, lifting, and stooping.

- mildly limited with crouching.

The ALJ found Dr. Normanyo's opinion was unpersuasive because 1) it was inconsistent with Plaintiff's symptom complaints, 2) it was inconsistent with the imaging, 3) it was inconsistent with the other physical examinations, 4) it was inconsistent with Plaintiff's reports of improvement with generally conservative treatment, and 5) it was not supported by Dr. Normanyo's examination or

---

[49] *Id.* § 416.920c(b)(2), (c)(1), (c)(2).

[50] AR 497–99, 512–14.

recommended conservative physical therapy.[51] Each of these articulated reasons is addressed in turn.

### a. *Inconsistent with Plaintiff's complaints*

First, the ALJ states the "opinion that [Plaintiff] can perform sedentary exertional work is inconsistent with [his] complaints of low back pain that radiates down his leg and numbness and tingling in his feet."[52] This conclusory statement is insufficient and appears contradictory. That Plaintiff had lower-back pain radiating down his leg and experienced numbness and tingling in his feet would appear to support Dr. Normanyo's sedentary-work opinion, which was defined as being able to walk or stand for only brief periods and being able to lift 10 pounds maximum and frequently lift or carry lightweight articles.[53] In comparison, the next exertional level that Dr. Normanyo could have selected on the form was light work, which required Plaintiff to be able to "lift 20 pounds maximum and frequently lift or carry up to 10 pounds, able to walk or stand six out of eight hours per day, and be able to sit and use pushing or pulling arm or leg movements most of the day."[54] The ALJ's finding that Dr. Normanyo's sedentary opinion is

---

[51] AR 28.

[52] *Id.*

[53] AR 499.

[54] *Id.*

inconsistent with Plaintiff's complaints of low-back pain is not supported by substantial evidence.

###### b.    _Inconsistent with the imaging_

Second, the ALJ found Dr. Normanyo's sedentary-work opinion inconsistent with the imaging studies documenting advanced degenerative changes of the lumbar spine and spondylolisthesis with spondylosis. Yet, Dr. Normanyo also reviewed the 2017 MRI and observed some lumbar symptoms consistent with the imaging.[55] The ALJ's conclusory finding fails to adequately explain why the ALJ found these imaging results inconsistent with the opined sedentary-work limitation.[56]

###### c.    _Inconsistent with the other physical examinations_

Third, the ALJ found Dr. Normanyo's sedentary-work limitation inconsistent with the:

> Physical examinations that documented decreased range of motion, substantial paraspinal hypertonicity in the thoracic-lumbar region, lumbosacral and sacroiliac joint compression, piriformis spasm bilaterally, appropriate gait, normal deep tendon reflexes, normal sensation to light touch, intact muscle strength in the bilateral lower

---

[55] AR 498–99, 512–14.

[56] _See Reddick v. Chater_, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

extremities, positive straight leg raise on the right, and impaired sensation in his feet.[57]

This conclusory finding fails to adequately explain why these medical observations, many of which were abnormal, were inconsistent with Dr. Normanyo's opined sedentary-work limitation. The ALJ must explain why the normal findings, such as normal gait and intact muscle strength in the bilateral lower extremities, outweigh the abnormal findings, such as decreased range of motion, lumbosacral and sacroiliac joint compression, positive straight leg raise on the right, and impaired sensation in his feet, to such extent that Dr. Normanyo's sedentary-work opinion is inconsistent with the physical examinations.[58]

> ### d.    _Inconsistent with Plaintiff's reported improvement_

Fourth, the ALJ found Dr. Normanyo's opinion inconsistent with Plaintiff's "reports of improvement with generally conservative treatment, including medication management[,] physical therapy, and manipulation."[59] While the ALJ may consider improvement with treatment, the ALJ must also consider whether

---

[57] AR 28.

[58] AR 499. _See Brown-Hunter v. Colvin_, 806 F.3d 487, 492 (9th Cir. 2015); _Embrey_, 849 F.2d at 421–22; _Reddick_, 157 F.3d at 725 ("The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

[59] AR 28.

the claimant improved to such an extent that he can sustain fulltime work.[60]  Here, the ALJ failed to adequately explain how the three treatment notes he cited indicate that Plaintiff's symptoms improved to such extent that he was able to sustain fulltime work at an exertional level above the opined sedentary-work.[61]

The first cited treatment note is from an endocrinology appointment for his diabetes mellitus, which mentions Plaintiff reported that his diabetes medications seemed to be working very well, the testosterone medication helped with his foot pain, and that his Gabapentin for his neuropathy caused fatigue.[62] Without further explanation by the ALJ, this treatment note focusing on Plaintiff's diabetes mellitus rather than his lumbar conditions does not provide substantial evidence to find Dr. Normanyo's sedentary-work limitation inconsistent with any improvement, particularly as Plaintiff reported medication fatigue.

The second cited record is an osteopathic manipulative treatment note.[63] During this treatment session, Plaintiff advised that he does not stretch or exercise, and he was observed with appropriate gait, full lower extremity strength,

---

[60] SSR 18-3p.

[61] The ALJ also did not discuss whether Dr. Normanyo or another medical provider recommended more aggressive treatment that Plaintiff declined despite lacking any good cause to do so. *See* SSR 18-3p.

[62] AR 703, 706.

[63] AR 723–25.

substantial paraspinal hypertonicity in the thoracic-lumbar region, lumbosacral and sacroiliac compression, piriformis spasm (bilateral, left greater than right), and positive straight leg test on the right in the lumbar spine. After the treatment session was over, Plaintiff reported improvement with his symptoms and demonstrated improvement in range of motion. The therapist recommended stretching, ice, and anti-inflammatory medications. The ALJ fails to explain how this conservative treatment improved Plaintiff's lumbar, ankle, and other chronic conditions to such extent that he could sustain work above Dr. Normanyo's opined sedentary-work limitation.[64]

The third treatment note was from a physical therapy session in September 2020.[65] During this session, Plaintiff reported low-back pain of 7/10 and that the therapy session resulted in increased lumbar range-of-motion and improved function for activities of daily living. However, such is not necessarily inconsistent with Dr. Normanyo's opined sedentary-work restriction, particularly given the physical therapy treatment note's reference to the Oswestry index score. The physical therapist's 8-week goal for Plaintiff was to reduce his Oswestry disability score, which is based on a low-back pain disability questionnaire, from 58% to 30%.

---

[64] SSR 18-3p, Failure to Follow Prescribed Treatment (requiring the ALJ to assess whether the prescribed treatment, if followed, was expected to restore the claimant's ability to engage in substantial gainful activity).

[65] AR 836.

An Oswestry index score of 58% is defined as a severe disability under that index, meaning "pain remains the main problem in this group, but activities of daily living are affected. These patients require detailed investigation."[66] An Oswestry index score of 30% qualifies as a moderate disability under the index, meaning, "The patient experiences more pain and difficulty with sitting, lifting, and standing. Travel and social life are more difficult, and they may be disabled from work. Personal care, sexual activity and sleeping are not grossly affected, and the patient can usually be managed by conservative means."[67] While this index score is based on Plaintiff's self-reports, the physical therapist did not indicate in his observations or assessments that Plaintiff appeared to be malingering or otherwise reporting symptoms that were inconsistent with what the physical therapist observed during treatment.

Therefore, without the ALJ offering more than his stated conclusion that Plaintiff's reports of improvement with generally conservative treatment were inconsistent with Dr. Normanyo's sedentary-work opinion, the Court is unable to meaningfully review whether the ALJ's interpretation of the evidence is supported by substantial evidence.

---

[66] https://www.rehab.msu.edu/_files/_docs/Oswestry_Low_Back_Disability.pdf (last visited May 18, 2022).

[67] *Id.*

e.    _Not supported by Dr. Normanyo's examination_

Finally, the ALJ found Dr. Normanyo's sedentary-work opinion was not supported by her examination because Dr. Normanyo only assessed moderate limitations with sitting, standing, walking, lifting, and stooping; she recommended physical therapy, and she noted that her examination of Plaintiff did not "elicit the level of subjective complaints" during her examination and therefore there were "limited objective findings to support subjective concerns."[68] Dr. Normanyo's examination revealed low-left back pain tenderness, a negative straight leg test, normal range of musculoskeletal motion, normal reflexes, normal muscle tone, and normal coordination.[69] She also reviewed the 2017 MRI.[70] In her treatment note, Dr. Normanyo stated:

> DSHS forms filled out for patient at this time based on physical exam **findings** of today. He does have subjective complaints including pain that is not fully supported by my exam today. The patient does have an infestation [sic] some symptoms from **imaging** stated below however unsure of severity meeting symptoms described.[71]

When Dr. Normanyo's opinion and treatment notes are read together, it appears that her sedentary-work opinion was based on her observations and the imaging, and that she declined to select that Plaintiff was "severely limited," i.e., that he

---

[68] AR 28 (citing AR 498).

[69] AR 513–14.

[70] _Id._

[71] AR 513 (emphasis in original).

was "[u]nable to meet the demands of sedentary work," as Plaintiff's subjective complaints tended to indicate.

Regardless of whether the ALJ's finding that Dr. Normanyo's opinion was inconsistent with her own examination and course of treatment, the ALJ's other errors when analyzing Dr. Normanyo's opinion too heavily affected the ALJ's consideration of Dr. Normanyo's opinion. Therefore, even if this reason is supported by substantial evidence, it does not save the ALJ's consideration of Dr. Normanyo's opinion.

3.    Dr. Elder[72]

In September 2020, Dr. Elder completed a report wherein he listed several of Plaintiff's treatment dates, the diagnoses, and Plaintiff's symptoms and signs. He opined that Plaintiff would have side effects that limit his activities, namely that the prescribed Gabapentin makes him sleepy; that his conditions (obesity, spondylolisthesis, anxiety/depression, and peripheral neuropathy) were likely to cause pain; that he needed to lie down and/or elevate his legs during the day "several times per day from 10 [minutes]–2/3 hours"; and that it was "uncertain" whether work on a regular and continuous basis would cause Plaintiff's condition

---

[72] The ALJ referred to Dr. Elder as Dr. Elders. However, Dr. Elder's medical report indicates that his last name is "Elder." This typographical error by the ALJ is harmless.

to deteriorate, as it "would depend on [the] type of work and work conditions."[73] Dr. Elder also opined that Plaintiff would miss work because of his physical therapy appointments, which he had twice a week. Dr. Elder did not opine as to Plaintiff's exertional ability, whether he had manipulative limitations, or whether he would be off-task and unproductive.  Instead, Dr. Elder noted that he deferred to the osteopathic-manipulative specialist as to those matters.[74]

The ALJ found Dr. Elder's report unpersuasive because Dr. Elder "did not provide an opinion regarding [Plaintiff's] functional limitations related to his ability to work."[75]

Plaintiff argues the ALJ erred by not considering Dr. Elder's report. The Court agrees. Dr. Elder not only listed Plaintiff's diagnoses, symptoms, and signs, but he also opined that Plaintiff needed to lie down and/or elevate his legs several times per day and that his medication caused sleepiness. Therefore, regardless of whether Dr. Elder offered an opinion as to Plaintiff's work-related exertional abilities, the ALJ was required to consider whether the opinions about Plaintiff's

---

[73] AR 841.

[74] AR 842.

[75] AR 28.

ability to stay on task were consistent with or supported by the record. The ALJ erred by not doing so.[76]

This error is consequential because the vocational expert testified that if an individual must elevate his legs, or otherwise be unproductive or off-task, for more than 10% of the workday that he is unable to sustain employment.[77] Therefore, if Plaintiff must lie down or elevate his legs for several times a day for 10 minutes to 2–3 hours as opined by Dr. Elder, Plaintiff is unable to sustain gainful employment.

## C.    Symptom Reports: the ALJ must reevaluate on remand.

Plaintiff argues the ALJ failed to provide valid reasons for discounting his symptom reports. As the ALJ did not find Plaintiff was malingering, the ALJ was required to consider all of the evidence and provide "specific, clear and convincing" reasons supported by substantial evidence for rejecting Plaintiff's symptom reports.[78]

---

[76] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ asserts).

[77] AR 86–88.

[78] Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments inconsistent with the objective medical evidence and improvement with generally conservative treatment.[79] As this matter is being remanded due to the ALJ's consequential errors when evaluating Listing 1.04A and the medical opinions, the ALJ is to also reevaluate Plaintiff's symptom reports.

First, while objective medical evidence is a relevant factor for the ALJ to consider when assessing a claimant's symptoms,[80] the ALJ must do more than recite a chronology of the medical records and then jump to setting forth whatever RFC restrictions the ALJ deems consistent with the objective medical evidence. The ALJ must specify *why* the objective medical findings are inconsistent with

---

side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p; 20 C.F.R. § 416.929(c).

[79] AR 488–93.

[80] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24

Plaintiff's symptom reports.[81] And contrary to the Commissioner's argument, it was not sufficient for the ALJ to simply cite to some normal findings in Dr. Drenguis' consultative examination report; instead, the ALJ must explain why those normal findings, when considered against the abnormal findings, are inconsistent with Plaintiff's reported symptoms. Moreover, the ALJ may not disregard symptom reports solely because they are not substantiated affirmatively by objective medical evidence.[82]

Second, the ALJ must cite to substantial evidence supporting his finding that Plaintiff's generally conservative treatment was inconsistent with his reported symptoms. In his decision, the ALJ failed to explain this finding or cite to evidence indicating that more aggressive treatment was recommended to alleviate Plaintiff's conditions and associated pain. Moreover, the ALJ did not cite to evidence indicating that the conservative treatment abated Plaintiff's chronic lumbar, right

---

[81] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (explaining that an ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints).

[82] *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ankle, other impairments, and associated pain and limitations to an extent that permitted him to sustain work at the identified RFC.[83]

Finally, on remand, the ALJ must consider the side effects of Plaintiff's prescribed medications in accordance with SSR 16-3p, including the Gabapentin-medication fatigue he reported to medical providers and testified to at the administrative hearing.

**D.    Other Steps: The ALJ must reevaluate on remand.**

Because the ALJ's weighing of the medical evidence impacted his sequential analysis, the Court does not analyze Plaintiff's remaining claims.

**E.    Remand for further proceedings.**

Plaintiff submits a remand for payment of benefits is warranted.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[84] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand rule."[85] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

---

[83] *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

[84] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

[85] *Id.*

discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[86]

Here, the second and third conditions are met. The ALJ's Listing 1.04A denial was not supported by substantial evidence and the ALJ failed to provide legally sufficient reasons for rejecting Dr. Normanyo's and Dr. Elder's opinions. If Plaintiff satisfies Listing 1.04A or if the opinions of Dr. Normanyo and Dr. Elder were found persuasive, Plaintiff would be considered unable to sustain fulltime work.

However, further administrative proceedings are needed. More analysis must be done regarding whether Plaintiff satisfies Listing 1.04A. On remand, the ALJ must call a qualified physician to opine as to whether Plaintiff satisfies Listing 1.04A.[87] After the subsequent hearing, the ALJ is to reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process. If the ALJ discounts Plaintiff's symptom reports, the ALJ must cite to specific evidence to explain why each symptom is rejected.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is

    **GRANTED**.

---

[86] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[87] *See* HALLEX I-2-5-34.A.1.

2.     The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is

**DENIED**.

3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

**REVERSING** and **REMANDING** the matter to the Commissioner of

Social Security for further proceedings pursuant to sentence four of 42

U.S.C. § 405(g).

4.     The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 13th  day of June 2022.

_____
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 28